UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TIMOTHY A. HAAGEN, SR., )<br> )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>CITY OF FORT WAYNE, )<br> )<br>    Defendant. ) | CASE NO.: 1:04-CV-306-TS |

**OPINION AND ORDER**

This matter is before the Court on an unopposed Motion for Summary Judgment filed by the Defendant, the City of Fort Wayne, on April 15, 2005. For the reasons stated herein, the Defendant's Motion is granted.

**BACKGROUND**

On August 13, 2004, the Plaintiff, Timothy A. Haagen, Sr., filed his *pro se* Complaint against the Defendant in this Court. The Plaintiff cited the Americans with Disabilities Act (ADA) as the basis for his suit and alleged that he was removed from his position because of his medical condition and without due process or just cause. On September 21, 2004, the Defendant filed its Answer and Affirmative Defenses. On November 2, 2004, the Plaintiff moved to amend his Complaint to add a claim under 42 U.S.C. § 1983, which the Court granted. On January 10, 2005, the Defendant filed an Amended Answer and Affirmative Defenses to the Plaintiff's original Complaint. On January 19, the Defendant filed an Answer to the Plaintiff's § 1983 amendment.

On April 15, 2005, the Defendant filed a Motion for Summary Judgment on the entirety of the Plaintiff's claims and informed the *pro se* Plaintiff of his obligation to respond. *See Timms v.*

*Franks*, 953 F.2d 281 (7th Cir. 1992); *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982). On July 12, 2005, the Defendant filed a Motion for Ruling on Summary Judgment noting that the Plaintiff had not responded to the Defendant's Motion and requesting that the Court rule on the Motion using the facts as claimed and supported by admissible evidence.

### SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In other words, the record must reveal that no reasonable jury could find for the nonmoving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at

325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party may, if it chooses, support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982); *Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d 677, 683 (7th Cir. 1977).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). "[T]he adverse party's response, by affidavits or as otherwise provided in this [Rule 56], must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 248–50 (1986). If there is no genuine issue of material fact, the only question is whether the moving party is entitled to judgment as a matter of law. *Miranda v. Wisc. Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996).

In the Northern District of Indiana, any party opposing a summary judgment motion is to respond by filing

> any affidavits or other documentary material controverting the movant's position, together with a response that shall include in its text or appendix thereto a "Statement of Genuine Issues" setting forth, with appropriate citations to discovery responses, affidavits, depositions, or other admissible evidence, all material facts as to which it is contended there exists a genuine issue necessary to be litigated.

N.D. Ind. L.R. 56.1(a).

> In determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion, as supported by the depositions, discovery responses, affidavits and other admissible evidence on file.

N.D. Ind. L.R. 56.1(b).

## MATERIAL FACTS

The following facts are derived from the Defendant's "Statement of Undisputed Material Facts." They are supported by admissible evidence and uncontested by the Plaintiff.

The Plaintiff worked for the City of Fostoria, Ohio, as a water filtration plant supervisor. He has a Class III operator's license. The City of Fostoria requires the water filtration plant supervisor to have a Class IV license and gave the Plaintiff one year to obtain this license. The City terminated the Plaintiff's employment in May 2002 after he failed to get the required license.

The Plaintiff then sought employment with the Defendant, the City of Fort Wayne, but continued to live in Ohio. The Plaintiff applied for reciprocity to get a WT5 Indiana license, which he obtained in December 2002. After receiving the license, the Plaintiff contacted Chet Shastri to schedule an interview with the Defendant. After his interview in December, the Defendant offered the Plaintiff the position of Chief Operator/Relief in the water filtration plant. On January 26, 2003, the Plaintiff accepted the offer.

As a condition of employment, the Plaintiff was required to pass a post-offer physical examination. The exam was conducted on January 30 by Dr. Rowe of the Business Health Services clinic. The exam revealed that the Plaintiff had a high pulse rate and blood pressure, elevated

4

glucose levels, and poor exercise tolerance. Dr. Rowe recommended that the Plaintiff follow up with his primary care physician as soon as possible and resume taking his hypertension medication. Dr. Rowe also completed a Respirator Medical Evaluation Recommendation Form (Respirator Form), in which he stated that the Plaintiff was eligible to wear a full face respirator, but that he needed to follow up with his family physician to have a medical examination and treadmill test before using the respirator.

On February 5, 2003, the Plaintiff came to Fort Wayne to complete employment-related paperwork for the Defendant. While in the Human Resources Department, the Plaintiff learned that there was a problem with the Respirator Form and the Defendant would not allow him to start work. Upon learning that he was not cleared to begin work, the Plaintiff and his wife went to Dr. Rowe's office.

Dr. Rowe met with the Plaintiff to discuss the Respirator Form. The Plaintiff and his wife asked Dr. Rowe to clarify the Form so that the Plaintiff would be cleared to work and could obtain health insurance coverage through his employment with the City. On February 6, 2003, Dr. Rowe revised the Respirator Form and cleared him to begin work. Dr. Rowe did so based on the Plaintiff's representation that his job with the Defendant would not entail heavy physical demands.

On February 7, the Defendant advised the Plaintiff that he was to report to work on February 10 at the water filtration plant. He would start as a probationary employee per the terms of the Agreement for the International Union of Operating Engineers. During the ninety-day probationary period, the City can release an employee in its sole discretion, without giving rise to a grievance.

On the Plaintiff's first day of work he walked through the plant and met other employees, including Pamela Feaster, the plant's administrative assistant. Feaster noticed that the Plaintiff

needed to sit down following the walk through the plant and that he appeared to be short of breath, was red in the face, and was sweating heavily.

Meanwhile, Mary Nelson-Janisse, the Risk Manager for the City, noticed discrepancies between the Plaintiff's first Respirator Form from Dr. Rowe and the revised Form. She contacted Feaster and learned that the Plaintiff was displaying signs of physical distress following his walk through the plant. Nelson-Janisse asked the water filtration plant supervisor, Chet Shastri, to send the Plaintiff to her office.

Shastri first met with the Plaintiff and told him there was a problem with his Respirator Form. The Plaintiff asked Shastri to double check the Form because he had talked to Dr. Rowe who had provided an updated Form. The Plaintiff explained that he thought the matter had already been resolved. Shastri advised that he was not cleared to begin work and to report to the Human Resources Department. When Nelson-Janisse met with the Plaintiff, she told him that the City needed to clarify his ability to perform the essential functions of the Chief Operator/Relief position.

Nelson-Janisse called Dr. Rowe to discuss the Plaintiff's ability to work in the water filtration plant. Dr. Rowe told Nelson-Janisse that he cleared the Plaintiff to work on the basis of his representation that the job did not entail heavy physical demands. She informed Dr. Rowe that the job in fact required the Plaintiff to walk long distances and frequently climb stairs. Dr. Rowe told Nelson-Janisse that such activities could potentially impose a hazard on the Plaintiff's health. He stated that the Plaintiff could wear a full face respirator, but he would not be able to exert himself while wearing it without creating a significant risk to his health. Dr. Rowe also opined that the Plaintiff needed to address three medical issues before he could be cleared for a job that required walking long distances and frequently climbing stairs: (1) poor exercise tolerance with pre-existing

6

coronary artery disease with an equivocal treadmill exercise test; (2) hypertension that was not being medicated; and (3) uncontrolled diabetes mellitus. Dr. Rowe opined that if the Plaintiff did not address these issues before beginning work, the job could potentially impose a hazard on the Plaintiff's health.

Nelson-Janisse relayed to the Plaintiff, by telephone, what she had learned from her conversation with Dr. Rowe. She told the Plaintiff that he needed to address the three medical issues identified by Dr. Rowe and that the doctor had advised that he could not work in the position until the medical issues were under control. Neslon-Janisse told the Plaintiff that if he could provide proof that the issues were under control, he could reapply for the position.

The Plaintiff requested a meeting and on February 11, 2003, the Plaintiff and his wife met with Nelson-Janisse and the City's Director of Human Resources. Nelson-Janisse told the Plaintiff and his wife about her conversation with Dr. Rowe and again explained the problems with the Plaintiff starting work before addressing his medical issues. The Plaintiff insisted that he was qualified to work and cited the revised Respirator Form. The City did not change its position, but agreed to keep the position open for thirty days to allow the Plaintiff to get medical treatment and reapply for the job. The Plaintiff did not reapply.

## DISCUSSION

The Plaintiff alleges that when the Defendant terminated his employment, it violated his rights under the ADA and denied him due process.

**A. ADA Claim**

The Plaintiff contends that the City wrongly perceived him as disabled and unable to perform the duties of the Chief Operator/Relief position. The Defendant maintains that it removed the Plaintiff from the Chief Operating/Relief position on the basis of the Dr. Rowe's medical opinion that the Plaintiff could not perform the essential functions of the job without serious risk to his health.

The ADA prohibits employers from discriminating against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, . . . and other terms, conditions, and privileges of employment," 42 U.S.C. § 12112(a). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

The plaintiff bears the burden of showing that he is a qualified individual with a disability in order to successfully prosecute an ADA claim. *Weiler v. Household Fin. Corp.,* 101 F.3d 519, 524 (7th Cir. 1996) (citing *DeLuca v. Winer Indus.*, 53 F.3d 793, 797 n.3 (7th Cir.1995)). A plaintiff must pass a two-step test to be a qualified individual with a disability. 29 C.F.R. app. § 1630.2(m); *Weiler*, 101 F.3d at 524. First, the individual must satisfy "the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." *Id.* Second, the individual must be able to "perform the essential functions of the position held or desired, with or without reasonable accommodation." *Id.* Whether the plaintiff meets the "qualified individual with a disability" definition is determined as of the time of the employment decision. *Id.*

8

The Plaintiff possessed the requisite experiences, skills, and licenses for the position, as evidenced by the City's job offer. The Defendant's motion for summary judgment turns on the second test, whether the Plaintiff could perform the essential functions of the job with or without reasonable accommodation. The Court finds, on the basis of the record before it, that no reasonable jury could find that the the Plaintiff demonstrated that he could walk long distances and frequently climb stairs. Accordingly, his ADA claim fails as a matter of law.

Dr. Rowe listed three medical conditions—poor exercise tolerance with pre-existing coronary artery disease, hypertension, and diabetes—that he believed had to be addressed before the Plaintiff could be cleared to work a job that required walking long distances and climbing stairs frequently. The Defendant does not dispute that he had these medical conditions. Nor does he dispute that the revised Respirator Form clearing him to begin work, and which he championed to the City as proof that he could perform the essential functions of the job, was based on inaccurate information regarding the job's requirements. He does not dispute that walking long distances and frequently climbing stairs was an essential requirement of the job or suggest that any accommodation would have enabled him to perform these tasks. Dr. Rowe stated that even with a full face respirator, the Plaintiff would not be able to exert himself without creating a significant risk to his health. The Defendant was entitled to rely on Dr. Rowe's medical opinion. *See Campbell v. Fed. Express Corp.*, 918 F. Supp. 912, 918 (D. Md. 1996) (stating that an employer is "entitled to rely on medical determinations made by its medical professionals") (cited in *Bay v. Cassens Transport Co.*, 212 F.3d 969, 974 (7th Cir. 2000)).

Because the Plaintiff has not shown that he could perform the essential functions of the Chief Operator/Relief position, the Defendant is entitled to summary judgment on the Plaintiff's ADA

claim.[1]

**B. Due Process Claim**

The Plaintiff claims that the City violated his due process rights when it failed to initiate a hearing regarding his termination, provide notice of the hearing, or provide termination papers. The Defendant asserts that because the Plaintiff was a probationary employee, he did not have a property interest in his continued employment and was not entitled to due process.

The Fourteenth Amendment to the Constitution provides that no state shall "deprive any person of life, liberty, or property without due process of law." Thus, in order to state a cause of action under § 1983 for deprivation of a property interest without due process, the Plaintiff must allege facts which would demonstrate that he has a right in continued employment amounting to a property interest. *Mauke v. Town of Dune Acres*, 835 F. Supp. 468, 473 (N.D. Ind.1993) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985); *Bd. of Regents v. Roth*, 408 U.S. 564, 576–78 (1972)). Protected property interests are "created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577. A property interest can be created by statute, ordinance, or by contract. *Mauke*, 835 F. Supp. at 473. As a general rule, under Indiana law, employment relationships are terminable at the

---

[1] An additional basis may exist for dismissing the Plaintiff's ADA claim. Even when an individual with a disability is a qualified individual, an employer may terminate that individual if he or she poses a "direct threat" to health or safety. 42 U.S.C. § 12113(b). The ADA defines "direct threat" as a "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). However, the Supreme Court has affirmed the EEOC's interpretation of 42 U.S.C. § 12113(a), which permits employers to apply "qualification standards" that are "job-related and consistent with business necessity," to include a defense for employers when the employee is a direct threat to himself. *Chevron U.S.A., Inc. v. Echazabal*, 536 U.S. 73 (2002). Thus, even if it was physically possible for the Plaintiff to walk up stairs and walk long distances, which he has not established, the Defendant was justified in believing that doing so would present a direct health threat to the Plaintiff.

will of either party. *Id.* (citing *Speckman v. City of Indianapolis*, 540 N.E.2d 1189, 1192 (Ind. 1989)).

The Plaintiff does not point to any source of his claimed property interest. It is undisputed that the Plaintiff by contract was a probationary employee and, as such, the City could release him from his employment "at its sole discretion, without giving rise to a grievance." (Pf.'s Dep. 152, Ex. F.) Because of this at-will status, the Plaintiff did not have a protected property interest in continued employment. *Williams v. Seniff*, 342 F.3d 774, 787 (7th Cir. 2003) (holding that county police officer fired during his probationary employment period did not have protected property interest in continued employment); *see also Phegley v. Ind. Dep't of Highways*, 564 N.E.2d 291, 295 (Ind. Ct. App.1990) (stating "[a]s a general rule, an employee at will has no property interest in further employment"); *Ind. Alcoholic Beverage Comm'n v. Gault*, 405 N.E.2d 585, 589 (Ind. Ct. App.1980) (stating that in Indiana an at-will government employee has no property interest in continued employment and is not entitled to procedural protections).

Because the Plaintiff had no protected property interest in continued employment with the City, he was not entitled to due process and his § 1983 claim must be dismissed.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment [DE 41] and the Defendant's Motion for Ruling on Summary Judgment [DE 43] are GRANTED. Judgment will be entered in favor of the Defendant, the City of Fort Wayne, and against the Plaintiff, Timothy A. Haagen, Sr.

SO ORDERED on October 31, 2005.

                                     s/ Theresa L. Springmann
                                     THERESA L. SPRINGMANN

UNITED STATES DISTRICT COURT